(No. 80-CV-0841—)

*In re* APPLICATION OF STEVEN HOGAN.

*Order filed March 17, 1981.*
*Opinion filed July 27, 1984.*
*Amended opinion filed August 7, 1985.*
*Order filed November 27, 1985.*

JEFFREY GOLDBERG and STEPHEN N. NOVOSAD, for Claimant.

NEIL F. HARTIGAN, Attorney General (MAUREEN CAIN and ALISON P. BRESLAUER, Assistant Attorneys General, of counsel), for Respondent.

Poch, J.

This claim arises out of an incident that occurred on May 27, 1979. Steven Hogan, Claimant, seeks compensation pursuant to the provisions of the Crime Victims Compensation Act, hereafter referred to as the Act. Ill Rev. Stat. 1979, ch. 70, par. 71 *et seq.*

This Court has carefully considered the application for benefits submitted on the form prescribed by the Court, and an investigatory report of the Attorney General of Illinois which substantiates matters set forth in the application. Based upon these documents and other evidence submitted to the Court, the Court finds:

1. That the Claimant, Steven Hogan, age 18, was a victim of a violent crime as defined in section 2(c) of the Act, to wit: battery (Ill. Rev. Stat. 1977, ch. 38, par. 12—3).

2. That on May 27, 1979, the Claimant was intentionally struck by a car driven by the offender, whom he did not know. The incident arose from a dispute between the offender and Mr. Darryl Gordon,

the driver of the car in which the Claimant was a passenger. The offender's car repeatedly tried to pass Mr. Gordon's car as both were northbound on Pulaski Avenue. Mr. Gordon stopped his car at 800 S. Pulaski, Chicago, Illinois, to inquire as to why the offender was driving in this manner. The Claimant asked Mr. Gordon to open the trunk of his car and he then went to the trunk. At this time, the offender's car, which was behind Mr. Gordon's vehicle, lurched forward striking the Claimant and pinning him between the cars. The Claimant was taken to St. Anthony's Hospital for treatment. The Claimant suffered the loss of his left leg above the knee as a result of this incident. The offender was charged with reckless conduct and battery but he has fled the jurisdiction of the court.

3. That the Claimant seeks compensation for loss of earnings only. All medical/hospital expenses were covered by the Illinois Department of Public Aid.

4. That section 2(h) of the Act states that loss of earnings shall be determined on the basis of the victim's average monthly earnings for the six months immediately preceding the date of the injury or on $750.00 per month, whichever is less.

5. That the Claimant alleges that he was employed by Mr. Booker T. Parrow, 4049 W. Monroe, Chicago, Illinois, during the six months prior to the incident. The Claimant has submitted an employer report allegedly completed by Mr. Parrow, listed as Exhibit A, which is attached hereto and made a part thereof. The Attorney General's office has been unable to contact Mr. Parrow to verify the information on the report. The attorney for the Claimant is unable to provide any further proof, in the form of the Claimant's income tax return, W2 forms, or a contact with Mr. Parrow, to verify the information

on this report. Based on the lack of verification of the employment information, the Claimant has failed to provide sufficient evidence that he had any earnings in the six months prior to the incident upon which to base loss of earnings.

6. That section 6.1(b) of the Act limits the right of compensation to persons who have suffered a pecuniary loss of $200.00 or more attributable to a violent crime resulting in the injury or death of the victim.

7. That by reason of the Claimant's failure to substantiate his claim for loss of earnings, he has failed to show a pecuniary loss of $200.00 or more as required by section 6.1(b) of the Act.

8. That this claim does not meet a required condition precedent for compensation under the Act.

It is hereby ordered that this claim be, and is hereby denied.

## OPINION

ROE, C.J.

The applicant, Steven Hogan, is seeking compensation for loss of earnings pursuant to the provisions of the Crime Victims Compensation Act, hereinafter referred to as the Act. Ill. Rev. Stat. 1979, ch. 70, par. 71 *et seq.*

In an order dated March 17, 1981, this Court, while finding that the applicant had been a victim of a violent crime on May 27, 1979, and had suffered the amputation of his left leg as a result of the crime, also found that the applicant had failed to provide sufficient evidence that he had any earnings in the six months prior to the crime which could form the basis of an award for loss of earnings. We specifically noted that the applicant had

been unable to provide proof, in the form of the applicant's income tax return, W2 forms, or a contact with the applicant's alleged employer to verify his alleged employment during the requisite time period. Since the applicant failed to substantiate that he was employed and had earnings during the relevant time period, he failed to prove his claim for loss of earnings and was therefore denied compensation for failing to show a pecuniary loss of $200.00 or more as required by section 6.1 of the Act.

Following the issuance of the March 17, 1981, order, the applicant timely filed a petition pursuant to the Act requesting a hearing before a commissioner. Hearings were subsequently held and the commissioner has duly filed his report with the Court.

The issue before this Court is whether the applicant, through evidence presented following the issuance of the March 17, 1981, order denying this claim, has now sufficiently substantiated that he had earnings during the six months prior to the crime which may form the basis for an award for loss of earnings. The Court has carefully considered the commissioner's report, briefs filed by both parties, the evidence deposition of the applicant's alleged employer and other documents submitted concerning this claim.

The applicant contends that sufficient proof of earnings during the relevant time period has been presented to merit the granting of an award. This contention primarily relies on information set forth in the evidence deposition of Booker T. Parrow, the applicant's alleged employer. On direct examination in the deposition Mr. Parrow stated that he was engaged in the business of wrecking and scavenging, had employed the applicant for approximately a year prior to the crime

which caused the applicant's injury, and had paid the applicant about $150.00 a week in cash while the applicant was in his employment. Mr. Parrow further revealed that he did not withhold any taxes from the wages payed to the applicant and did not keep any books or records in his business.

Cross-examination at the deposition primarily dealt with discrepancies between testimony of Mr. Parrow on direct examination and an employer documentation form bearing Mr. Parrow's signature which was dated October 25, 1980. The discrepancies concerned the period of time the applicant allegedly worked for Mr. Parrow and the rate of wages the applicant was paid. While attempting to explain the discrepancies, Mr. Parrow revealed that he had signed the form, but that his daughter had filled it out at his direction because he had difficulty reading.

The State first contends that the primary issue before the Court is whether the Attorney General, pursuant to his statutory authority to investigate crime victims' claims, can require official documentation of past earnings to substantiate a claim by a crime victim. It is the State's position that substantiation of a claim for loss of earnings requires official documentation of past earnings pursuant to section 4 of the original Crime Victims Compensation Act and sections 7.1(a)(8), (a)(9), and (b) of the amendatory provisions of the Act. Said section 4 merely defines pecuniary loss. Nothing therein can be construed to require any type or amount of documentation of past earnings. Sections 7.1(a)(8), (a)(9), and (b) read as follows:

"77.1. Contents of application for compensation 7.1(a). The application shall set out:

 ✿ ✿ ✿

8. releases authorizing the surrender to the Court of Claims or the Attorney General of reports, documents and other information relating to the matters specified under this Act and rules promulgated in accordance with the Act.

9. such other information as the Court of Claims or the Attorney General reasonably requires.

b. The Attorney General may require that materials substantiating the facts stated in the application be submitted with the application." (Ill. Rev. Stat. 1979, ch. 70, pars. 77.1(a)(8), (a)(9), (b).)

It seems abundantly clear to us that the above quoted provisions of the Act refer to what the application shall contain and what the Attorney General may seek and obtain in conducting his investigation. Nothing therein can be construed as specifying what constitutes the applicant's burden of proof. There is no issue, the State's statement in its memorandum to the contrary, as to whether the Attorney General can require official documentation of past earnings to substantiate such a claim. The Attorney General can. However, what the Attorney General can require and what the sufficiency of proof of entitlement is are two different things.

The State essentially raised four arguments in support of its contention that official documentation is required. First, it argued that the principles of federalism and policy require that income produced in violation of Federal tax laws be denied recognition by a State judicial body. We would tend to agree with that argument. However, it has not been shown conclusively that the applicant here violated any Federal tax laws. Many scenarios can be envisioned based on the evidence in the record, and without more, which totally exculpate the applicant.

Second, it was contended that the legislative history of the Crime Victims Compensation Act evidences the preference of the legislature to confine awards to law abiding citizens. We cannot deny this, but do question its

relevancy here. Nowhere is it alleged or implied that the applicant's alleged job was anything but lawful. It is still legal to be paid in legal tender for services rendered. Again, the Respondent has not shown that the applicant has violated any law. Moreover, if it is the Attorney General's position that the applicant violated a State tax law, it is within his powers and duties to seek enforcement through prosecution and/or collection. Governmental liens have been upheld in proceedings under the Act. *Gettis v. State* (1975), 30 Ill. Ct. Cl. 922.

The third argument made was that previous decisions of this Court have demonstrated a preference that official documentation of past earnings be utilized in loss-of-earnings and loss-of-support claims. This Court, however, has not heretofore required that such official documentation must be submitted in support of a claim for loss of earnings. We have determined that "competent evidence" must be submitted to support an award for loss of earnings. (*In re Application of Johnson* (1975), 30 Ill. Ct. Cl. 803.) However, "competent evidence" is simply upon what we base our decisions as to issues of fact.

Adequacy of tendered proof in loss-of-earnings claims is a question of fact for this Court to determine. While the Act is silent concerning the degree of proof required to prove a claim for loss of earnings, this Court has said that such a claim must be proved by a preponderance of the evidence. (*In re Application of Sole* (1976), 31 Ill. Ct. Cl. 713.) A proposition proved by a preponderance of the evidence has been described as one that is probably more true than not. (*Estate of Ragon* (1979), 79 Ill. App. 3d 8, 398 N.E.2d 198, 203.) The presentation of official documentation of past earnings makes it easier for the Court to determine

whether an applicant has proved a claim for loss of earnings by a preponderance of the evidence. However, other evidence may be considered in deciding whether an applicant has met his or her burden of proof. Indeed, this Court has previously made an award for loss of earnings without requiring the presentation of official documentation. *In re Application of Moy* (1976), 31 Ill. Ct. Cl. 733.

The last argument in support of the contention that official documentation is required was that denial of the Attorney General's right to require official income documentation will vitiate his ability to fulfill the statutory mandate for complete investigations of claims. This opinion is not to be construed in any way as limiting the Attorney General's authority to require any documentation. Again, that is not at issue here. We are not requiring the Attorney General to accept any type of evidence. If the Attorney General feels, after due investigation, that the claim has not been substantiated to his satisfaction he may say so in his report and recommend denial. The applicant has a right to have this Court hear what evidence he or she has, and, based on that evidence, render a decision on what must be a factual determination. All we are saying is that the inability of the applicant to supply what the Attorney General has a statutory right to request in the course of his investigation is not *per se* grounds for denial of the claim.

The Respondent also contends that even if presentation of official documentation is not required, we should reject the deposition testimony of Mr. Parrow because of discrepancies between that testimony and the previously submitted employer documentation form. We disagree with this contention. Mr. Parrow did

attempt to explain that the discrepancies were due to his inability to read well and to his poor memory regarding dates. It should be noted that the employer documentation form was filled out more than a year after the applicant was employed by Mr. Parrow. This lapse of time, along with Mr. Parrow's failure to keep accurate business records, his poor memory, and his inability to read well, may explain the inaccuracies on the employer documentation form. Furthermore, that Mr. Parrow testified subject to penalties regarding his failure to keep accurate business and tax records is a persuasive reason to not reject his testimony outright.

As was stated earlier in this opinion, claims for loss of earnings must be proved by a preponderance of the evidence and a proposition proved by a preponderance of the evidence is one that is probably more true than not. While the deposition testimony of Mr. Parrow, concerning his employment of the applicant and the discrepancies regarding the employment documentation form, was not always clear, we are pursuaded that it is more true than not that the applicant was employed by Mr. Parrow during the six months prior to the crime and earned approximately $150.00 a week during the relevant period of employment.

Having determined that the applicant was employed and had earnings during the six months prior to the crime, which may form the basis of an award for loss of earnings, an issue still exists regarding the amount of compensation for loss of earnings that should be awarded. The record fails to indicate the length of time the applicant was unable to work due to his injury and whether the applicant received unemployment compensation or other benefits that could be set off from an award for loss of earnings. We therefore find that this

matter must be sent to a commissioner for the purposes of hearing evidence and making a recommendation concerning the amount of compensation for loss of earnings the applicant is entitled to receive.

It is hereby ordered that this cause be set for hearing before a commissioner for the purposes set forth above.

## AMENDED OPINION

Poch, J.

This claim arises out of an incident that occurred on May 27, 1979. Steven Hogan, Claimant, seeks compensation pursuant to the provisions of the Crime Victims Compensation Act, hereafter referred to as the Act. Ill. Rev. Stat. 1977, ch. 70, par. 71 *et seq.*

On March 17, 1981, this Court entered an order dismissing the Claimant's cause for Claimant's failure to provide sufficient documentation to establish a loss under the Act. The Claimant filed a timely petition requesting a hearing before the Court of Claims. Both parties filed briefs as to the issue of employment subsequent to the evidence deposition of Mr. Booker T. Parrow. On July 27, 1984, this Court issued an order in which it found the Claimant had established that, during the six months immediately preceding the incident, he had been employed and earned approximately $150.00 per week.

The Court has carefully considered the application for benefits submitted on the form prescribed by the Court, an investigatory report submitted by the Attorney General of Illinois, this Court's previous opinion, and the stipulation entered into by the Claimant and the Attorney General following an investigation, all

of which substantiate the matters set forth in the application. Based upon these documents and other evidence submitted to the Court, the Court finds:

1. That the Claimant for compensation is Steven Hogan, of 1617 South Drake, Chicago, Illinois. The Claimant was 18 years of age at the time of the incident.

2. That on May 27, 1979, the Claimant was intentionally struck by a car driven by the offender, whom he did not know. The incident arose from a dispute between the offender and Mr. Darryl Gordon, the driver of the car in which the Claimant was a passenger. The offender's car repeatedly tried to pass Mr. Gordon's car as both were northbound on Pulaski Avenue. Mr. Gordon stopped his car at 800 South Pulaski, Chicago, Illinois, to inquire why the offender was driving in this manner. The Claimant asked Mr. Gordon to open the trunk of his car and he then went to the trunk. At this time, the offender's car, which was behind Mr. Gordon's vehicle, lurched forward striking the Claimant and pinning him between the cars. The Claimant was taken to St. Anthony's Hospital for treatment. The Claimant suffered the loss of his left leg above the knee as a result of this incident. The offender was charged with reckless conduct and battery but he has fled the jurisdiction of the court.

3. That the Claimant seeks compensation for loss of earnings and medical expenses.

4. That per this Court's opinion of July 27, 1984, it has been established that the Claimant was employed by Mr. Booker T. Parrow, 4049 West Monroe, Chicago, Illinois, prior to the injury and that his average monthly earnings were $600.00.

5. That the Claimant began working for Central Orthopedic Appliances one year subsequent to his injury.

6. That section 4 of the Crime Victims Compensation Act, (Ill. Rev. Stat. 1977, ch. 70, par. 74) states that loss of earnings shall be determined on the basis of the victim's average monthly earnings for the six months immediately preceding the date of the injury or on $500.00 per month, whichever is less.

7. That based upon $500.00 per month, the maximum compensation for loss of earnings for one year is $6,000.00.

8. That at the time of his injury, Claimant incurred medical/hospital expenses which were paid by public aid. Claimant subsequently incurred a medical expense of $1,200.00 for a prosthetic appliance necessitated by the incident. Claimant has paid $1,200.00 towards this balance.

9. That pursuant to section 10.1(e) of the Act, this Court must deduct $200.00 from all claims, (except in the case of an applicant 65 years of age or older) and the amount of benefits, payments or awards payable under the Workers' Compensation Act, Dramshop Act, Federal Medicare, State Public Aid, Federal Social Security Administration burial benefits, Veterans Administration burial benefits, health insurance, or from any other source, except annuities, pension plans, Federal Social Security payments payable to dependents of the victim and the net proceeds of the first $25,000.00 (twenty-five thousand dollars) of life insurance that would inure to the benefit of the applicant.

10. That the Claimant has received nothing in reimbursements that can be counted as an applicable deduction.

11. That all necessary documents were timely filed.

12. That the Claimant is entitled to an award based on the following:

| | |
|---|---:|
| Compensable Loss of Earnings | $6,000.00 |
| Net Medical/Hospital Expenses | 1,200.00 |
| Total | $7,200.00 |
| Less $200.00 Deductible | − 200.00 |
| Total | $7,000.00 |

It is hereby ordered that the sum of $7,000.00 (seven thousand dollars and no cents) be and is hereby awarded to Steven Hogan, an innocent victim of a violent crime.

## ORDER

Poch, J.

This cause coming to be heard upon the petition of Jeffrey M. Goldberg, Ltd., attorney, for the Claimant, Steven Hogan, seeking fees in the above-captioned matter for services rendered on behalf of the Claimant, due notice being given and the Court being fully advised finds:

That this Court on August 7, 1985, awarded the Claimant, Steven Hogan, seven thousand ($7,000.00) dollars as an innocent victim of a violent crime.

Pursuant to section 12, of the Crime Victims Compensation Act, (Ill. Rev. Stat. 1983, ch. 70, par. 82) no fee may be charged to the Claimant under the Act except that the attorney may charge the Claimant for

representing the Claimant at the hearing an amount to be determined by the Court as reasonable.

The Court has carefully reviewed the petition for fees and the report of the Commissioner and finds that the sum of fourteen hundred ($1,400.00) dollars is a reasonable amount pursuant to the work performed in preparation for and representation at the hearing.

It is hereby ordered:

That Jeffrey M. Goldberg, attorney for Claimant, Steven Hogan, be compensated in the sum of fourteen hundred ($1,400.00) dollars out of the award to Claimant, Steven Hogan, of seven thousand ($7,000.00) dollars.