(No. 84-CV-0947—)

*In re* APPLICATION OF ERIC L. GOFF

*Order filed January 9, 1986.*

*Opinion filed February 24, 1989.*

MICHAEL B. MCCLELLAN, for Claimant.

NEIL F. HARTIGAN, Attorney General (ALISON P. BRESLAUER and JAMES A. TYSON, JR., Assistant Attorneys General, of counsel), for Respondent.

## ORDER

Poch, J.

This claim arises out of an incident that occurred on July 17, 1983. Eric L. Goff, Claimant, seeks compensation pursuant to the provisions of the Crime Victims Compensation Act, hereafter referred to as the Act (Ill. Rev. Stat. 1987, ch. 70, par. 71 *et seq.*).

This Court has carefully considered the application for benefits submitted on March 23, 1984, on the form prescribed by the Attorney General, and an investigatory report of the Attorney General of Illinois which substantiates matters set forth in the application. Based upon these documents and other evidence submitted to the Court, the Court finds:

1. That the Claimant, Eric L. Goff, age 18, was a victim of a violent crime as defined in section 2(c) of the Act, to wit: aggravated battery (Ill. Rev. Stat. 1979, ch. 38, par. 12—4).

2. That on July 17, 1983, the Claimant was shot by an offender who was not known to him. The incident occurred on the street at 211 E. Bradley, Champaign, Illinois. Police investigation revealed that the attack was the result of a racially motivated dispute between the offender and a group of individuals. The Claimant was a bystander and apparently had no part in the dispute. The Claimant was taken to Burnham City Hospital for treatment of his injury. The offender was initially charged with attempted murder. He later pleaded guilty to reckless conduct and unlawful use of a weapon and was sentenced to 60 days in the Champaign County Correctional Center.

3. That the Claimant seeks compensation for medical and hospital expenses only.

4. That section 2(h) of the Act states that loss of earnings shall be determined on the basis of the victim's average net monthly earnings for the six months immediately preceding the date of the injury or on $750.00 per month, whichever is less.

5. That the Claimant was not employed for the six months immediately preceding the date of the incident out of which this claim arose and, therefore, suffered no loss of earnings compensable under the Act.

6. That the Claimant submitted medical and hospital bills in the amount of $4,419.14, none of which was paid by insurance, leaving a balance of $4,419.14.

7. That pursuant to section 10.1(e) of the Act, this

Court must deduct $200 from all claims (except in the case of an applicant 65 years of age or older), and the amount of benefits, payments or awards payable under the Workers' Compensation Act, Dramshop Act, Federal Medicare, State public aid, Federal Social Security Administration burial benefits, Veterans Administration burial benefits, health insurance, or from any other source, except annuities, pension plans, Federal Social Security payments payable to dependents·of the victim and the net proceeds of the first $25,000 of life insurance that would inure to the benefit of the applicant.

8. That section 10.1(g) of the Act states that compensation under this Act is a secondary source of compensation and the applicant must show that he has exhausted the benefits reasonably available under governmental or medical and health insurance programs, including, but not limited to Workers' Compensation, the Federal Medicare program, the State public aid program, Social Security Administration burial benefits, Veterans Administration burial benefits and health insurance.

9. That on August 18, 1983, the Claimant was advised by the Christie Clinic to seek medical assistance through the Illinois Department of Public Aid. However, the Claimant did not follow through with this. Additionally, in the same month, Burnham City Hospital requested that the Claimant go into their office to complete a public aid application but the Claimant did not do so. Information obtained from the Illinois Department of Public Aid indicates that the Claimant was eligible for medical assistance through that agency at the time the incident occurred. Therefore, public aid would have assumed responsibility for the Claimant's medical/hospital expenses had he made the providers of services aware of his eligibility.

10. That by reason of the Claimant's failure to exhaust the remedies reasonably available to him through public aid, the Claimant has not met required conditions precedent for compensation under the Act.

It is hereby ordered that this claim be, and is, hereby denied.

## OPINION

DILLARD, J.

Claimant, Eric Goff, filed his application for compensation under the Crime Victims Compensation Act on March 23, 1984. His application sought medical and hospital expenses totaling $4,738.14. After an investigatory report was filed with the Illinois Court of Claims by the Attorney General on December 2, 1985, this Court entered an Order denying the application on January 9, 1986. The denial was based upon Claimant's alleged failure to exhaust primary sources of compensation, specifically, public aid.

On February 10, 1986, Claimant requested a hearing to contest the Court's Order denying his application. Trial was held before Commissioner Robert Frederick on June 24, 1987. The evidence consists of the original investigatory report, departmental report pursuant to Ill. Adm. Code 790.140, filed September 22, 1986, the transcript of testimony, and Claimant's Exhibits No. 1 and No. 2. Respondent's Exhibit No. 1 was refused. Both parties filed a brief. The Claimant advised the Commissioner by letter that a reply brief would not be filed.

## The Facts

On July 17, 1983, Claimant was shot by an offender

who was not known to him at 211 East Bradley, Champaign, Illinois. Police investigation revealed that the attack was the result of a racially motivated dispute between the offender and a group of individuals. Claimant was a bystander and had no part in the dispute. He was taken to Burnham Hospital for treatment of his injury. The offender pleaded guilty to reckless conduct and unlawful use of weapons and was sentenced to 60 days in jail.

Claimant was under the guardianship of the State of Illinois from April 15, 1975, until March 4, 1984. From July 1, 1983, until November 14, 1983, he was a runaway and his whereabouts unknown to the Department of Children and Family Services. Claimant was born on September 15, 1964, and was, therefore, 18 years of age at the time of the injury.

At the trial, Eric Goff testified that he had been shot by the offender. He cooperated with the prosecution of the offender and he gave copies of all his medical bills to the State's Attorney. However, there was no order of restitution entered upon the conviction of the offender. Claimant filed suit against the offender but had been unable to serve a summons on the offender. Claimant incurred medical expenses of $74 to Prairie Professionals, $350 to Central Illinois Anesthesia Services, $3,134.14 to Burnham Hospital, and $1,180 to Christie Clinic.

While in the hospital, its personnel suggested Claimant apply for public aid benefits. He applied but was told it was "too late." According to Claimant, a "lady" then sent him on a "wild goose chase." He went to township aid and executed a release to them. The release to township aid was notarized February 14, 1984, and was Claimant's Exhibit No. 1.

Claimant never received public aid or township aid. Claimant did not know the exact date he approached public aid for assistance but believed it was shortly after he had been released from the hospital. Additionally, he could not remember the name of the public aid caseworker.

On cross-examination, Claimant testified he was 18 on the date of the incident. Prior to the shooting he had no employment since he was in high school. It was almost a year later before Claimant became employed. At the time of the shooting, Claimant was in the hospital two days. Before discharge, he was asked how he was going to pay the bill. He told the hospital he did not know how he was going to pay the bill and he was referred to public aid. Within a few weeks of discharge, he started receiving bills for his treatment. He further admitted that he went to township aid on February 14, 1984, and to public aid just prior to that date. There is no question he waited more than six months to file a claim with public aid. Claimant did not remember if he received a written denial of his claim from public aid and Claimant presented no correspondence from public aid.

## The Law

Pursuant to section 10.1(g) of the Act (Ill. Rev. Stat., ch. 70, par. 80.1(g)), crime victims compensation is a secondary source of compensation and the application must show exhaustion of benefits reasonably available under governmental, medical or health insurance programs, including, *inter alia*, workers' compensation, the Federal Medicare program, the *State public aid program* (emphasis added), Social Security administration burial benefits, Veterans administration burial

benefits, and health insurance. The evidence is clear that the Claimant was advised of the need to file a public aid claim even while he was in the hospital in mid-July 1983. He received medical and hospital bills shortly after leaving the hospital. He did not make his claim to State public aid until mid-February and was denied because of his late filing.

In Crime Victims Compensation Act cases, the Court of Claims has often denied applications where the Claimant failed to follow the rules applicable to such claims. The Court denied a claim where Claimant failed to timely file a notice of intent to file a claim. (*In re Application of Hutcherson* (1985), 37 Ill. Ct. Cl. 491.) The Court found ignorance of the rules to be no exception to the rules of the Crime Victims Compensation Act. The Court has denied claims where the applicant failed to cooperate with the police. (*In re Application of Ford* (1985), 37 Ill. Ct. Cl. 443.) The Court has denied claims where the pecuniary loss fails to exceed $200. *In re Application of Becker* (1984), 27 Ill. Ct. Cl. 457.

To prevail, Claimant must prove by a preponderance of evidence that he sustained a compensable loss under the rules of the Crime Victims Compensation Act. *In re Application of Thanasouras* (1984), 36 Ill. Ct. Cl. 456.

Claimant asks the Court to rely solely on his unsubstantiated testimony that he applied for State public aid when the Act is solely a secondary source of compensation. This Court has long required that all alternative remedies be exhausted in Crime Victims Compensation Act cases whether they be administrative or legal before seeking final determination of a claim in the Court of Claims. *In re Application of Dickey* (1981),

35 Ill. Ct. Cl. 514; *In re Application of Hamilton* (1983), 35 Ill. Ct. Cl. 1023.

Even if it is believed that Claimant made application to State public aid, he did not do so until more than six months had elapsed from his hospitalization. By his own testimony, he was rejected for his failure to timely file his public aid claim. By failure to exhaust other remedies and sources of recovery available to him, Claimant has not met a required condition precedent for compensation under the Act.

Based on Claimant's failure to exhaust other remedies and sources of recovery available to him, it is hereby ordered that this application be, and hereby is, denied.