449

(No. 87-CV-1142–

*In re* APPLICATION OF GERALD WAYNE BAVIDO

*Opinion filed July 31, 1990.*

*Notice filed July 31, 1990.*

*Opinion filed September 18, 1991.*

*Order filed November 15, 1991.*

*Order filed February 3, 1992.*

*Order filed March 24, 1992.*

GERALD WAYNE BAVIDO, *pro se*, for Claimant.

NEIL F. HARTIGAN and ROLAND W. BURRIS, Attorneys General (JAMES MAHER and BETH EMERY, Assistant Attorneys General, of counsel), for Respondent.

## OPINION

SOMMER, J.

This claim arises out of an incident that occurred on February 13, 1986. The Claimant, Gerald Wayne Bavido, seeks compensation pursuant to the provisions of the Crime Victims Compensation Act, hereafter referred to as the Act. Ill. Rev. Stat. 1985, ch. 70, par. 71 *et seq.*

This Court has carefully considered the application for benefits submitted on April 16, 1987, on the form prescribed by the Attorney General, and an investigatory report of the Attorney General of Illinois which substantiates matters set forth in the application. Based upon these documents and other evidence submitted to the Court, the Court finds:

1. That on February 13, 1986, the Claimant, Gerald Wayne Bavido, age 35, was a victim of a violent crime as defined in section 72(c) of the Act, to wit: aggravated battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—4).

2. That the crime occurred in Urbana, Illinois, and the Claimant has complied with all of the eligibility requirements of section 76.1 of the Act.

3. That the Claimant seeks compensation for loss of earnings.

4. That section 72(h) of the Act states that loss of earnings shall be determined on the basis of the victim's average net monthly earnings for the six months immediately preceding the date of the injury or on $750.00 per month, whichever is less.

5. That the Claimant's average net monthly earnings were $189.53. Claimant was disabled and unable to

work for a period of five working days. Based upon $189.53 per month, the maximum compensation for loss of earnings is $43.10.

6. That the Claimant has received no reimbursements that can be counted as an applicable deduction under section 80.1(e) of the Act.

7. That the Claimant has complied with all pertinent provisions of the Act and qualifies for compensation thereunder.

It is hereby ordered that the sum of $43.10 be and is hereby awarded to Gerald Wayne Bavido, an innocent victim of a violent crime.

## NOTICE

TO: Gerald Wayne Bavido
1317 Fairlawn Drive
Rantoul, Illinois 61866

Compensation having been paid to the above-named claimant(s) pursuant to the provisions of the Illinois Crime Victims Compensation Act (Ill. Rev. Stat., 1985, ch. 70, par. 71 *et seq.*), you are hereby notified that the State of Illinois claims a charge against any verdict, judgment or decree entered, or any money or property which is recovered on account of the claim, demand or cause of action against the assailant(s) or any third party who may be liable in damages.

You are further notified that if you seek civil damages from the assailant(s) or any third party who may be liable you must give written notice to the Attorney General of the making of said claim or demand or the filing of said suit for such damages. Neither you nor anyone on your behalf has the authority to release the charge accruing to the State of Illinois by any settlement

or compromise with any party who may be liable to you for damages.

## OPINION

MONTANA, C.J.

The Claimant, Gerald Wayne Bavido, brought this claim seeking compensation pursuant to the provisions of the Crime Victims Compensation Act, hereafter referred to as the Act. Ill. Rev. Stat. 1985, ch. 70, par. 71 *et seq.*

On July 31, 1990, the Court awarded Claimant $43.10 after carefully reviewing the application for benefits submitted by Claimant on April 16, 1987, and after reviewing the investigatory report of the Attorney General. The Court found that Claimant was the victim of a violent crime as defined in section 72(c) of the Act, to wit: aggravated battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—4).

The Court found Claimant's average net monthly earnings to be $189.53 and that Claimant was disabled and unable to work for a period of five working days. Based upon the $189.53 per month, the maximum compensation for loss of earnings was $43.10, which was the Court's award. Claimant properly filed a request for hearing or review of the award on August 16, 1990. In his request for hearing, Claimant disputed the findings that his average monthly net earnings were only $189.53, that he was only disabled five days, and further requested that his medical bills be paid.

The cause was tried before the commissioner assigned to the case. The evidence consists of the transcript of testimony taken January 25, 1991, before the commissioner, Claimant's exhibits 1, 2, 3, 4, 5, 6, 7, 8,

9, 10, 11, 12, 13, 14, 15, 15a, 16, 16a, 17, 18, 19, 20, 21, 22, 23, 24, 25, and Respondent's exhibits 1 and 2. Claimant also provided the Court with the following documentation:

(a) Letter of May 18, 1990, from Dr. Larry Johnson with bill;

(b) Copy of *Moore v. Industrial Comm'n* (1978), 71 Ill. 2d 353, headnotes only;

(c) Transcript of pages 2 and 7 only of *Bavido v. Beasley Cab Co.*, No. 86 WC 11999, before the Industrial Commission;

(d) Copy of bill from Dr. O'Hearn, D.D.S. for $60;

(e) Copy of 1985 W-2 for Claimant from Rantoul Radio Cab, earnings statement for Claimant for part of September (year unstated); earnings statement for October 1985 from Rantoul Cab; wage statement from Western Maintenance Co. for the last quarter of 1985 for Claimant;

(f) Wage statement for Claimant from Caradco for the period 8/22/85 to 9/9/85;

(g) Statement by Claimant of his wages based on his documentation.

All of these documents will be considered by the Court as evidence.

The documentation provided by Claimant will be considered his brief. The State failed to file a brief.

## The Facts

On February 3, 1986, the Claimant was an innocent victim of an aggravated battery. Claimant was attacked by passengers in the cab he was driving at the time.

Many of Claimant's medical bills were paid by Public
Aid. Claimant also filed a workers' compensation claim.
Claimant had no medical insurance.

*The Medical Claim:* After the beating, Claimant
was treated for his injuries, post-concussion syndrome,
and various neurological problems. The matter is
complicated in that Claimant had an automobile
accident post-injury, where he was intoxicated, which
added significantly to his condition. He wrecked his car.
The Mercy Hospital diagnosis for the car accident
injuries included a diagnosis of acute alcoholism. Claim-
ant believed he still owed Dr. Paunicka almost $1,300
and he also still owed Dr. Hardwick. Most of Dr.
Hardwick's bill has been paid. As to Dr. Paunicka and
Dr. Hardwick, Claimant was unable to differentiate the
billings for treatment for the crime victim injuries and
those treatments for the car accident injuries. Claimant
also believed he had some unpaid bills with a psycholo-
gist named Mrs. Blaylock and a dentist, Dr. Johnson.

Barbara Blaylock, a registered clinical psychologist,
indicated in her letter of January 29, 1990, that her best
diagnosis is that Claimant suffers from post-traumatic
stress disorder, with very high levels of anxiety,
depression, and some paranoid ideation. She believes
the difficulty appears to have originated from the
beating underlying this claim. Barbara Blaylock's report
of May 10, 1990, indicates Claimant was successful in
obtaining social security disability payments based on
having arthritis of the cervical spine and paranoid
personality disorder. Claimant was described to have
joint tenderness, reduced right hand grasp strength, slow
movements of wrists and fingers, reduced sensation of
right hand fingers, numbness in the hands, abnormalities
of the lumbosacral spine, inability to lift more than 20

pounds with limited ability to carry, stand, walk, sit or perform bilateral manipulations, and pain during sitting and using arms. Mr. Bavido was therefore judged to be disabled for social security purposes.

A psychological examination by Louise F. Fitzgerald, Ph.D., psychologist from the psychology clinic of the University of Illinois, shared this same diagnosis. Dr. Thomas Radecki, a psychiatrist, entered a diagnosis of probable conversion disorder and mixed personality disorder with intense anger in March of 1987. Psychologist Blaylock stated that either the beating alone or the accident alone would be likely to cause such symptoms as exhibited in Claimant. The two traumatic incidents probably combined to make the symptoms more severe. She feels as of May 1991 that Claimant was not capable of holding a job.

The bills of psychologist Blaylock total $530. She has been paid $390 from a source or sources unknown, leaving a balance due of $140. Claimant presented bills from Dr. Helen Hardwick totaling $1,245 and receipts for payments of $40.

Claimant also presented a statement from Dr. Paunicka indicating a balance due of $1,456.38 and showing minimal cash payments totaling $106.72. There were also some indications of other payments from unspecified sources and bills sent by Dr. Paunicka to Medicare and Public Aid.

Dr. Helen Hardwick first saw Claimant on February 20, 1986, shortly after the beating. The bill for the February 20, 1986, treatment was paid by the workers' compensation carrier. The next time she saw Claimant was on August 25, 1987, after the auto accident where Claimant's car flipped over.

Dr. Paunicka's report of December 5, 1988, attributes his treatment and care mainly to the auto accident where Mr. Bavido "severely injured the spinal column when he flipped a car twice rolling the car" and "caused severe trauma to the spinal column." In Dr. Paunicka's report, no mention is made of any injuries or symptoms relating to the beating which is the subject matter of this case. In fact, the injuries and problems of which Claimant now complains were related solely to the auto accident by Dr. Paunicka in his report of December 5, 1988.

In Dr. Paunicka's report of May 11, 1990, Dr. Paunicka admits "it is very difficult for me [sic] distinguish which of the two injuries caused what problems." Dr. Paunicka refers in that statement to the beating and the auto accident. He further feels Dr. Hardwick, a chiropractor, could best answer the questions of what injuries and treatment were related to each traumatic incident. However, as previously indicated, Dr. Hardwick was unable to differentiate according to her reports.

A Carle Clinic report from Dr. Baddour of December 30, 1986, is quite telling. This report indicates:

"Mr. Bavido has had a couple of injuries this year. In February, he was driving a taxi and was apparently beat up by a gang fairly severely. He did not have any arm problems though at that time. He apparently gradually improved. In October of this year, however, he was in apparently a motor vehicle accident. He tells me he blacked out for a number of hours. He has been worked up by Dr. Shoemaker apparently for this in the past. Since that time, he has had arm pain. He says the severe pain has decreased now and the rest of the pain is gradually improving, but it still bothers him quite a bit. He says this is in both arms."

Claimant presented a report of May 18, 1990, from Larry Johnson, D.D.S. The report indicates Claimant has sensitive and loose teeth that might require further treatment including the possibility of surgical intervention. No causative nexus was presented in the report by

Dr. Johnson to the beating of February 1986. The same can be said of two receipts for minimal payments by Claimant to a dentist named O'Hearn provided by Claimant to the Court. No report is included which attributes these payments to any injury sustained in the February 1986 beating.

*The Lost Wages Claim:* A letter included in Claimant's Exhibit 1 prepared by Dorsey Accounting indicates Claimant's wages for October 1985 through February 1986 totaled $1,600.25. Payroll records indicate no wages were paid to Claimant after February 1986 and Claimant testified he has not worked since, except for a few hours on February 22, 1986. In addition to the job at the cab company, Claimant also worked two other jobs.

After the injury, Claimant tried painting jobs but was let go. The employer's report filed by Beasley Cab Company with the crime victim's claim only indicated wages as follows: November 1985, $335.28; December 1985, $300; January 1986, $326.20; February 1986, $175.20, for a total of $1,137.18. Claimant presented a W-2 form for 1985 indicating he earned $721.25 in wages and tips from Rantoul Radio Cab Inc. Claimant earned $258.29 gross in September 1985, and $215.12 net for September 1985 from Rantoul Radio Cab. He earned $462.96 gross for October 1985, and $375.74 net for 1985 from Rantoul Radio Cab. Claimant also earned $27 from Western Maintenance Company for the last quarter of 1985, specifically in October 1985, as evidenced by the employer's report provided by Claimant. Claimant further provided evidence from Caradco, an Alcoa company, that he earned the following amounts during the six-month period prior to the date he became a victim of a violent crime.

| | | Gross | Net |
|---|---|---|---|
| (a) | Period ending 8/25/85 | $80.06 | $68.97 |
| (b) | Period ending 9/1/85 | $249.40 | $195.67 |
| (c) | Period ending 9/8/85 | $169.31 | $137.02 |
| (d) | Period ending 9/15/85 | $43.31 | $39.66 |

The total net income from Caradco totaled $441.32.

Claimant's Exhibit 10 indicates the fares Claimant had as a cab driver for November 1985 through February 1986. However, without an explanation, it is impossible to figure Claimant's net income for that period. No explanation accompanied the exhibit nor was any testified to.

The proper evidence before the Court is that Claimant had actual *net* income for the six-month period prior to the beating as follows:

| | |
|---|---|
| Caradco Co. | $ 441.32 |
| Rantoul Radio Cab | 590.86 |
| Beasley Cab Co. | 1137.18 |
| Western Maintenance | 27.00 |
| Total | $2196.36 |

The correct six-month average monthly *net* income should be $366.06. It is also a finding that, because of the injuries suffered by Claimant, he was unable to work for longer than five days, although that period attributable to his injuries from the beating is almost impossible to ascertain. Dr. Hardwick saw the Claimant on February 20, 1986, seven days after the incident, and Claimant was complaining of trauma to his head and neck. Dr. Hardwick did not see Mr. Bavido again until August 25, 1987, well after the auto accident. In August of 1987, Claimant was in much worse shape than Dr. Hardwick remembered Claimant to be in in February of 1986. There was a back to work assessment provided by

Claimant performed at Mercy Hospital in Urbana, Illinois, on June 19, 1986, pursuant to an order of Dr. Young, a psychiatrist. This assessment was done prior to the automobile accident in October of 1986. The diagnosis of Dr. Young was cranial cerebral trauma. One of the recommendations of the back to work center was,

"It does not appear that client would be an appropriate candidate for the Mercy Hospital Back to Work Center Work Hardening Program secondary to only minimal deficits, identified from musculoskeletal and physical capacity evaluations."

### The Law

The Court of Claims has the statutory duty to consider all the facts stated in Claimant's application, all other material and information submitted, and the report of the Attorney General. (Ill. Rev. Stat. 1985, ch. 70, par. 79.1.) The Court in this case has considered the Claimant's application, all the exhibits and documents provided by Claimant, and the Attorney General's report. The Court has carefully considered all of Claimant's documentation even though much of this evidence might not be admissible in a court of law. Ill. Rev. Stat. 1985, ch. 70, par. 83.1(b).

Compensation under the Crime Victims Compensation Act is a secondary source of compensation and the Claimant must show that he has exhausted the benefits reasonably available under the Criminal Victims Escrow Account Act or any governmental or medical or health insurance programs, including but not limited to workers' compensation, the Federal Medicare program, the State Public Aid program, Social Security Administration burial benefits, Veterans' benefits, and life, health, accident or liability insurance. Ill. Rev. Stat. 1985, ch. 70, par. 80.1(g); *In re Application of Goff* (1989), 41 Ill. Ct. Cl. 320.

The Claimant has previously been determined by the Court to be a victim of a crime of violence as defined by the Act. (Ill. Rev. Stat. 1985, ch. 70, par. 71(c).) Claimant seeks damages for pecuniary losses. He makes a claim for medical expenses and a claim for loss of earnings and future earnings. Ill. Rev. Stat. 1985, ch. 70, par. 71(h).

Loss of earnings and loss of future earnings are determined on the basis of the victim's average net monthly earnings for the six months immediately preceding the date of injury or on $1,000 per month, whichever is less. Loss of future earnings is reduced by any income for substitute work actually performed by the victim or by income he would have earned in available appropriate substitute work he was capable of performing but unreasonably failed to undertake. Ill. Rev. Stat. 1985, ch. 70, par. 71(h).

The burden of proof in crime victim compensation cases is on the claimant to prove his damages by a preponderance of the evidence. (*In re Application of Debartolo* (1984), 36 Ill. Ct. Cl. 442.) A proposition proved by a preponderance of the evidence has been described as one that is more probably true than not true. It is the Court's duty, as the trier of fact, to weigh all the evidence and determine whether a proposition is more true than not. The Claimant presents a claim for medical expenses and a claim for lost earnings. The Court has scrupulously considered the transcript, the Attorney General's investigative report, the exhibits of Claimant and Respondent, and the documentation provided by Claimant after the trial. In considering the medical expenses claim, the Claimant has failed to meet his burden of proof. It is the general rule in Illinois that the party seeking to recover damages has the burden of

establishing both the fact he has been injured and a reasonable value of those injuries. Damages may not be awarded on the basis of conjecture or speculation. *In re Application of Lopez* (1987), 39 Ill. Ct. Cl. 315.

Claimant testified that all of his medical expenses except for some bills to Dr. Paunicka and Dr. Hardwick had been paid by Public Aid or workers' compensation. The case is complicated in that Claimant was injured in an automobile accident in October of 1986. The Claimant only was treated by Dr. Hardwick once prior to October of 1986 and that bill was paid by the workers' compensation carrier. Claimant was not treated by Dr. Paunicka prior to the October 1986 automobile accident. Both Dr. Hardwick and Dr. Paunicka were unable to state what treatment they rendered after the October 1986 accident was related to the February 1986 beating and which was related to the October 1986 automobile accident. To enter an award for medical expenses based on this record would be pure speculation. There was no other competent evidence establishing any nexus between a medical bill and the Claimant's February 1986 injuries. Therefore, the claim for medical expenses must be denied.

For the lost earnings claim, Claimant must prove by a preponderance of the evidence that he had earnings during the six-month period prior to the injury and also the length of time he was unable to work due to his injury and whether he received any benefits that could be set off from an award for loss of earnings. (*In re Application of Hogan* (1985), 38 Ill. Ct. Cl. 395.) The Claimant has proven by a preponderance of the evidence that he earned net income averaging $366.06 per month for the six-month period prior to the injury and not the $189.53 as previously found by the Court.

The Claimant has also proven by a preponderance of the evidence that he was unable to work for a period exceeding the five days as previously found by the Court. Claimant worked for a short while on February 22, 1986, but could not continue as a cab driver and has not worked since. The February 22, 1986, cab fare sheet indicates Claimant only took in $18.40 in fares and took home only $10.50 on that date.

The length of time Claimant was unable to work due to the injuries sustained from the beating is somewhat speculative. The Back to Work Center evaluation is helpful in this regard as Claimant did not appear to be an appropriate candidate for the Back to Work Center program on June 19, 1986. It would appear from that evaluation that the objective findings were that Claimant could work at that time. It would further appear that any present inability to work would be related solely to the automobile accident of October 1986, wherein Claimant flipped his car and suffered injuries. There is absolutely no proof that the auto accident was in any way caused by the February 1986 beating. Giving the benefit of the doubt to Claimant, a reasonable finding under the circumstances and facts of this case would be that Claimant was unable to work for four months and six days due to the injuries suffered on February 13, 1986. This would total $1,537.45. Subtracting the $10.50 earned by Claimant on February 22, 1986, would leave damages at $1,526.95. However, the review of this case is not complete in that the law requires Claimant to exhaust other available remedies, including workers' compensation benefits before proceeding to the secondary source, the Crime Victims Compensation Act. (*In re Application of Goff, supra.*) The evidence indicates that Claimant was injured on the job and made a workers' compensation claim. The evidence further indicates that

the Claimant's workers' compensation claim was dismissed for want of prosecution on December 4, 1989, for Claimant's failure to appear at trial. For this failure to exhaust his primary remedies, Claimant's lost earnings claim must be denied. Claimant cannot abandon his workers' compensation claim by failing to appear for trial and then seek benefits under the Crime Victims Compensation Act.

However, we will allow Claimant 30 days to provide documentation that the workers' compensation claim was reinstated and, if so, what amount he recovered. If Claimant fails to file such documentation within 30 days, his request for additional compensation is hereby denied and the clerk's office is directed to so notify the parties.

## ORDER

MONTANA, C.J.

This cause comes on to be heard on the Claimant's response to our opinion filed September 18, 1991, due notice having been given, and the Court being advised, finds:

The aforesaid opinion found that Claimant would have been entitled to $1,537.45 in compensation for lost wages but the evidence showed he failed to pursue a workers' compensation action in that the case was dismissed for want of prosecution for failure to appear at trial. Workers' compensation benefits are a setoff under the Crime Victims Compensation Act. We did, however, allow the Claimant 30 days to provide documentation that his workers' compensation action was reinstated and it is on this response that the case is back before us.

Claimant filed a copy of an order which did reinstate the workers' compensation claim. He also filed a copy of the subsequent decision in which he was awarded over $6,000.00. This sum greatly exceeds the amount of loss we previously found and must be set off. For that reason his claim for additional compensation must be denied.

## ORDER

Montana, C.J.

This cause comes on to be heard on the Applicant's petition to re-open his claim, due notice having been given, and the Court being advised;

It is hereby ordered that the petition is hereby denied and this case is closed.

## ORDER

Montana, C.J.

This cause comes on to be heard on the Applicant's request for a new trial, due notice having been given, and the Court being advised;

It is hereby ordered that the Applicant's request is denied and the clerk's office is directed to accept no further pleadings in this case.