(No. 96-CV-2725—

*In re* APPLICATION OF WILLIE MAE BERNARD

*Order filed July 5, 1996.*
*Opinion filed July 23, 1998.*

WILLIE MAE BERNARD, *pro se.*

JIM RYAN, Attorney General (DONALD C. MCLAUGHLIN, JR., Assistant Attorney General, of counsel), for Respondent.

## ORDER

PER CURIAM.

This claim arises out of an incident that occurred on February 25, 1996. Willie Mae Bernard, mother of the

deceased victim, Mandel Durrah, III, seeks compensation pursuant to the provisions of the Crime Victims Compensation Act, hereafter referred to as the Act. 740 ILCS 45/1 *et seq.*

This Court has carefully considered the application for benefits submitted on March 18, 1996, on the form prescribed by the Attorney General and an investigatory report of the Attorney General of Illinois which substantiates matters set forth in the application. Based upon these documents and other evidence submitted to the Court, the Court finds:

1. That on February 25, 1996, the victim was fatally shot, allegedly by an offender who was not known to him. The incident occurred at 324 East 75th Street, Chicago, Illinois. Police investigation revealed that, prior to the incident, the victim was causing a disturbance at a liquor store as he was trying to solicit money from the customers. When the alleged offender entered the store, the victim approached her and an altercation ensued. During this altercation, the victim hit the alleged offender in her face. As a result of this action, the alleged offender produced a handgun and shot the victim. The alleged offender was apprehended and charged with first degree murder. The criminal proceedings against her are currently pending.

2. That section 10.1 of the Act indicates factors used to determine entitlement to compensation. Specifically, section 10.1(d) of the Act states that an award shall be reduced or denied according to the extent to which the victim's acts or conduct provoked or contributed to his injury or death, or to the extent to which any prior criminal conviction or conduct of the victim may have directly or indirectly contributed to the injury or death of the victim.

3. That it appears from the investigatory report and the police report that, prior to the incident, the victim was causing disturbances at a liquor store while he was trying to solicit money from the customers. When the alleged offender entered the store, the victim approached her and an altercation ensued. During this altercation, the victim hit the alleged offender in her face. As a result of this action, the alleged offender produced a handgun and shot the victim.

4. That the victim's conduct contributed to his death to such an extent as to warrant that the Claimant be denied entitlement to compensation.

5. That this claim does not meet a required condition precedent for compensation under the Act.

It is hereby ordered that this claim be, and is hereby, denied.

## OPINION

FREDERICK, J.

This claim arises out of an incident that occurred on February 25, 1996. Willie Mae Bernard, mother of the deceased victim, Mandel Durrah, III, seeks compensation pursuant to the Crime Victims Compensation Act, hereinafter referred to as the Act. 740 ILCS 45/1 *et seq*.

On July 5, 1996, this Court, relying on the investigatory report, denied the claim finding that the victim's conduct contributed to his death to such an extent as to warrant that the Claimant be denied compensation. The Claimant seeks only funeral expenses. The Claimant timely filed a request for hearing and the cause was tried before a Commissioner.

The investigatory report of the Attorney General indicates that, on February 25, 1996, the victim, Mandel

Durrah, III, was fatally shot by an offender who was not known to him. The incident occurred at 325 E. 75th St., Chicago, Illinois. The police investigation indicates the victim was causing a disturbance at a liquor store as he was trying to solicit money from the store customers. When the alleged offender entered the store, the victim approached her and an altercation occurred. During this altercation, the victim hit, or tried to hit, the alleged offender in the face. The alleged offender produced a handgun and shot and killed Mandel Durrah, III.

Claimant, Willie Mae Bernard, testified at the trial of this case before the Commissioner. She indicated that she was not present at the liquor store at the time her son, Mandel Durrah, III, was shot. Claimant did produce part of the transcript of the criminal trial against the alleged offender. Minnie Pruden also testified. She stated that she attended all hearings and the trial of the alleged offender, Laketa McCoy. Ms. Pruden testified that the victim was a fun-loving person and was not mean or violent. She believes the killing of Mandel Durrah, III was unnecessary. He was shot nine times with four times being in the back. She felt the police did not put down the truth in the reports. The burial expenses were $4,590.

Sandra Hatcher testified that she felt the offender had no remorse and that she believed the case had something to do with the Casey boys. The police report admitted into evidence indicates that the police talked to Barton Casey and Shawn Casey. They told the police that the victim had been in the store harassing customers as they entered for service. The victim told customers he would "kick their ass" or rob them. While in the rear of the store, both witnesses stated they heard a loud verbal altercation between the victim and an unknown customer. Soon thereafter, seven or eight shots rang out and the offender fled

the scene. The victim sustained seven gunshot wounds. The alleged offender was Shawn Casey's girlfriend.

Supplemental reports indicate that statements were taken of two customers, Sheila J. Skinner and Robert E. Skinner. Sheila Skinner stated that on February 26, 1996, at 12:10 a.m., she and her uncle, Robert E. Skinner, went to the Sunshine Food & Liquor Store to purchase beer. Upon arrival, an unknown black male, the victim, walked up to Robert E. Skinner and, for no apparent reason, grabbed her uncle and picked him up. Ms. Skinner heard the cashier shout, "Put him down or I'm going to call the police." The victim put Mr. Skinner down and they left the store. Robert E. Skinner related the same story to the police.

The portion of the transcript of the trial of Laketa McCoy provided by Claimant contains the testimony of Shawn Casey and Barton Casey. They were called as witnesses by the prosecution. Shawn Casey testified at trial that he had been dating Laketa McCoy. After he went to work, he saw the victim and alleged offender arguing back and forth. Mr. Casey told the victim to back off. He did, but eventually came back and said something about stomping or kicking "your ass." The victim then stuck his knuckles toward Laketa's face and said, "I ought to knock your ass out." Laketa said, "Well, do it then," or something to that effect. Laketa backed into a corner and the victim took a swing at her. Mr. Casey did not know if he hit her or not.

Mr. Casey ran around to the outside door and was going to pull the alleged offender in. As he did so, he heard gunshots. He got into the customer area and saw the victim on the floor. The alleged offender then went out the door. The police were called. Mr. Casey admitted he originally lied to the police by saying a man did the shooting. He was protecting his girlfriend. He later told the police it was his girlfriend who did the shooting.

Barton Casey testified that he was working the night of the shooting. The victim was in the store. He had been in the store on prior occasions and was known as Zack. When the victim first came in the store, he tried to sell Mr. Casey a radio but Mr. Casey didn't want it. The victim left and came back and asked for a half pint of Mostel. The victim did not have enough money. The victim asked Mr. Casey if he would let the amount of money slide. Mr. Casey said, "No." The victim then gave the next customer six cents as that customer was six cents short for the purchase he wanted. The customer and the victim then made a bet, which the victim lost. The victim became upset. As new customers came in, the victim would make gestures with his fist and say, "I am going to knock him out." Then the victim grabbed a customer and turned him upside down and shook him. Mr. Casey told the victim to stop, and he stopped. The victim left the store and then came back in. He had conversations with other customers.

Laketa McCoy came in. The victim said, "I am going to knock this bitch out," or something like that. An argument ensued and the victim threatened the alleged offender. He then hauled back and took a swing at the offender. Mr. Casey then heard the gunshots and then heard the victim fall. The alleged offender then ran out the door. He also testified he heard the defendant (Laketa McCoy) say to the victim prior to the shooting, "If you hit me, I am going to drop your ass where you stand." It was after the alleged offender said this that the victim took a swing at her.

## The Law

The Crime Victims Compensation Act is intended to aid and assist certain crime victims under specific circumstances to secure limited compensation to help pay for the damages they have sustained, but the rules and procedures

applicable to such claims must be followed before the Court can make an award. (*In re Application of Geraghty* (1989), 42 Ill. Ct. Cl. 388; *In re Application of Mandley* (1995), 47 Ill. Ct. Cl. 613.) The Crime Victims Compensation Act is created by statute and is a secondary source of recovery. *In re Application of George* (1993), 45 Ill. Ct. Cl. 483.

To prevail, Claimant must prove by a preponderance of the evidence that she sustained a compensable loss. *In re Application of Goff* (1989), 41 Ill. Ct. Cl. 320; *In re Application of Thanasouras* (1984), 36 Ill. Ct. Cl. 456.

Section 10.1(d) of the Act states that an award shall be reduced or denied according to the extent to which the victim's acts or conduct provoked or contributed to his injury or death; or to the extent to which any prior criminal conviction or conduct of the victim may have directly or indirectly contributed to the injury or death of the victim. (*In re Application of Casey* (1993), 46 Ill. Ct. Cl. 610.) In this case, we have considered all evidence presented, including the testimony at trial, the trial transcript, and the police reports. This Court can consider the police reports. *In re Application of Dixon* (1994), 47 Ill. Ct. Cl. 599.

While the Court certainly is sympathetic to the Claimant for the loss of her son, this Court must only consider the evidence before the Court. The evidence is clear that the victim was harassing and threatening numerous customers of the liquor store. The independent evidence of Sheila Skinner concerning the victim picking up her uncle, turning him upside down, and shaking him, corroborates that the victim was provoking the store customers. For purposes of the Crime Victims Compensation Act, we find that the victim provoked the alleged offender to such an extent that an award under this Act must be denied.

The Court of Claims is not a criminal court. We do not in any way exonerate the alleged offender. This Court can only state that, based on the limited evidence before the Court, the Claimant has failed to prove her case under the Act by a preponderance of the evidence. The evidence establishes that, but for the victim's harassing, threatening and assaulting the alleged offender, it is more likely than not that the victim would not have been shot and killed. We make no finding as to the justification or lack thereof for the alleged offender's conduct, as that is not within our bailiwick but is left to the criminal courts.

For this Court's determination based on the evidence before the Court, we must find that Claimant has failed to prove all conditions precedent for an award under the Act. For the foregoing reasons, it is the order of the Court that Claimant's claim be, and hereby is, denied.