(No. 91-CV-0827–)

FANNIE FORD, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Order filed June 3, 1992.*

*Opinion on reconsideration filed June 9, 1995.*

FANNIE FORD, *pro se*, for Claimant.

ROLAND W. BURRIS and JIM RYAN, Attorneys General (CHARLES A. DAVIS, JR. and PAUL H. CHO, Assistant Attorneys General, of counsel), for Respondent.

## ORDER

Per Curiam

This claim arises out of an incident that occurred on August 19, 1990. Fannie Ford, mother of the deceased victim, Ellery R. Ford, seeks compensation pursuant to the provisions of the Crime Victims Compensation Act, hereby referred to as the Act. 740 ILCS 45/1, *et seq.*

This Court has carefully considered the application for benefits submitted on October 18, 1990, on the form prescribed by the Attorney General, and an investigatory report of the Attorney General of Illinois which substantiates matters set forth in the application. Based upon these documents and other evidence submitted to the Court, the Court finds:

(1) That on August 19, 1990, the victim was shot by the alleged offender. The incident occurred near 842 North Springfield, Chicago, Illinois. Police investigation revealed that the alleged offender was selling narcotics for the victim, who had a history of drug-related offenses, and that the victim owed the alleged offender money as a result of their transactions. The alleged offender confronted the victim about this debt and during an ensuing argument, shot the victim. There is currently a warrant for the arrest of the alleged offender.

(2) That section 10.1 of the Act indicates factors used to determine entitlement to compensation. Specifically, section 10.1(d) of the Act states that an award shall be reduced or denied according to the extent to which the victim's acts or conduct provoked or contributed to his injury or death, or to the extent to which any prior criminal conviction or conduct of the victim may have directly or indirectly contributed to the injury or death of the victim.

(3) That it appears from the investigatory report and the police report that the victim was shot as a result of his involvement in the illegal sale of narcotics. Further, the victim had a history of drug-related offenses.

(4) That the victim's conduct contributed to his death to such an extent as to warrant that the Claimant be denied entitlement to compensation.

(5) That this claim does not meet a required condition precedent for compensation under the Act.

It is hereby ordered that this claim be, and is hereby denied.

## OPINION ON RECONSIDERATION

EPSTEIN, J.

This claim under the Crime Victims Compensation Act (the "Act") is before this Court for the third time. The Court denied this claim in 1992 on the papers filed and the recommendation of the Attorney General, finding that the claim was barred under the Act because the victim was murdered as a result of his involvement in illegal narcotics dealings such that his own conduct substantially contributed to his death. At the Claimant's request, the court in 1994 ordered reconsideration and a hearing, which was held before Commissioner Michael D. Fryzel on April 8, 1994. This claim is now before us for reconsideration on the hearing record and the report of our Commissioner.

The victim, Ellery R. Ford, was shot to death on August 19, 1990, on North Springfield Street in Chicago, Illinois, by a man named Desi Smith. The victim's mother, Fannie Ford, filed this $2,750.80 claim for funeral expenses under the Act on October 18, 1990.

The facts and the immediate circumstances of the victim's death are undisputed. The causal connections between his death and his own conduct, based on the evidence and on inferences drawn from the evidenced facts, are less clear. The backdrop to this tragedy, also undisputed, is that the victim had a history of drug-related offenses, had been convicted, and had served time in prison. His killing followed his release from prison, at a time when the Claimant and several witnesses contend the victim had abandoned his involvement with drugs and had undergone "rehabilitation."

The police investigation report indicated that the killer, Desi Smith, had sold narcotics for the victim. The victim reportedly owed Smith money as a result of prior drug dealings. On the critical occasion, Smith confronted the victim about the debt. The victim left his companion and went to talk to Smith privately. An argument ensued. Smith shot the victim. An arrest warrant was issued for Smith. (The Court is not advised of the disposition, if any, of the charges against Smith, which in any event is irrelevant to our determination under the Act.)

In the hearing before Commissioner Fryzel, Ms. Caprice Morales, a friend of the victim and a witness to the shooting, testified that the victim appeared to be rehabilitated after his release from prison and that he was substantially a changed person. She testified that he had stopped using drugs, was engaged to be married, that he spent time motivating kids and engaging in other salutary activities, and was no longer involved with drugs. Ms. Morales also testified that the argument that led to the shooting was about a drug debt that the victim owed his killer from previous drug deals. She testified that the two men asked her to leave so that they could have privacy while they talked.

Other testimony and several written submissions support the view, articulated most strongly by the Claimant, Mrs. Ford, that the victim was genuinely rehabilitated and had abandoned his prior involvement with the drug trade. This evidence was uncontradicted.

Given the undisputed facts, it is clear that this claim meets the threshold requirements of the Act for an award for losses caused by a qualified violent crime, and murder is clearly a covered crime under the Act. The focus of the inquiry in this case is the victim's contributory guilt or causation to his own death. This issue derives from section 10.1(d) of the Act, which provides as follows:

"(d) an award shall be reduced or denied according to the extent to which the victim's acts or conduct provoked or contributed to his injury or death, or the extent to which any prior criminal conviction or conduct of the victim may have directly or indirectly contributed to the injury or death of the victim;"

Under this statutory standard, the dispositive issue before us is the extent, if any, that the victim's "acts or conduct" or his "prior criminal * * * conduct" contributed, directly or indirectly, to his death. As applied to the facts of this case, the statute requires us to determine the extent to which two factors may have "provoked or contributed" to the argument and shooting that caused the victim's death: (1) the victim's prior involvement in illegal drug sales, and (2) his own conduct at the time of the shooting.

Because the argument and shooting arose out of a drug debt, we must conclude that the victim's prior illegal activities were a causative factor. On the other hand, because it was the killer rather than the victim who invoked (and plainly sought to collect) the illegal drug debt, because there is no evidence that the victim provoked the argument with his murderer or that he was involved in illegal activities at the time of his death or after his release from prison, and because the court is persuaded that the

victim was in some measure rehabilitated, we find that the victim's conduct at the time of the violent crime did not contribute to his death.

Accordingly, the award must be reduced by a factor reflecting the contributory involvement of the victim's *prior* involvement in the drug traffic. After due consideration of the facts presented, in light of the victim's later apparent rehabilitation, we conclude that the award should be reduced by 25%. Our determination is supported and influenced by our view that the public policy underlying the Act's contributory reduction requirement is to discourage, and to avoid State support for, illegal and violence-provoking conduct. That policy has reduced application in the case of a victim like Mr. Ford who appears to have surmounted his illegal past or at least to have been in the process of doing so. Such rehabilitation, in the words of the Claimant, is to be encouraged not discouraged. Nevertheless, the statute requires a measured reduction, and we have settled on 25% as the appropriate measure to reflect and balance the foregoing considerations.

The prior order of this Court is reversed, and the claim of Fannie Ford is allowed in the amount of $2,750.80, reduced by 25%. Claimant Fannie Ford is awarded the sum of $2,063.

Claim allowed. Claimant awarded $2,063.