(No. 95-CV-2225–

*In re* APPLICATION OF GLORIA ANDERSON

*Opinion filed March 28, 2000.*

GLORIA ANDERSON, *pro se.*

JIM E. RYAN, Attorney General (MARK E. MCCULLOUGH, Assistant Attorney General, of counsel), for Respondent.

630

## OPINION

FREDERICK, J.

This claim arises out of an incident that occurred on November 17, 1993. Claimant, Gloria Anderson, mother of the deceased victim, Calvin Alexander, seeks compensation pursuant to the Crime Victims Compensation Act, hereinafter referred to as the Act. 740 ILCS 45/1 *et seq.*

Pursuant to an order entered March 13, 1977, this Court determined, pursuant to section 10.1(d) of the Act (740 ILCS 45/10.1(d)), that the victim's conduct contributed to his death to such an extent that the claim should be denied. The Court based its determination on information contained in the investigatory report which included the police reports. The police investigation revealed that, several days prior to the incident that caused his death, the victim had beaten his ex-girlfriend, Sherry Webster, and had broken the windows of her automobile. In retaliation, the ex-girlfriend's brothers, Anthony Webster and Roderick Davis, waited outside of the victim's residence and confronted him as he exited his apartment. During this confrontation, one of the offenders maced the victim while the other offender stabbed the victim repeatedly about the chest. Subsequently, Anthony Webster

was apprehended and convicted of first degree murder. The Claimant made a timely request for hearing which was held on January 26, 1999. She was the only witness who testified.

The Claimant did not witness the incident upon which her claim is based. Her testimony indicated she was aware of the incidents of violence involving her son and Sherry Webster during their relationship. She testified she had warned her son to leave Sherry Webster alone because something was going to happen. She further testified that Sherry Webster had told her son three or four days prior to his murder that her brothers were going to kill him.

The investigatory report contains information from police reports which indicate that on April 14, 1993, the decedent was involved in an incident with Sherry Webster in which he struck her in the face. She suffered a fractured left orbital bone as well as a fractured sinus bone. A friend of Sherry Webster was also struck in the face by the decedent as the friend attempted to intercede on Ms. Webster's behalf. As a result of this incident, the decedent was charged with aggravated battery. The investigatory report also contains information from a police report which indicates that on November 5, 1993, the decedent was involved in an incident in which he broke a window out of Ms. Webster's car with a tire iron and thereafter knocked Ms. Webster to the ground and kicked her.

The statement of Roderick Davis, which was taken by police on November 19, 1993, is contained in the investigatory report. That statement reveals that on the date of the incident, Mr. Davis's brother, Anthony Webster, called him to discuss the frustration his brother was experiencing about the relationship between their sister and

the decedent. His brother then asked to be picked up so that they could go confront the decedent. They proceeded to where the decedent was residing. On the way to the decedent's residence, Mr. Webster showed Mr. Davis a black pocket lock knife. Mr. Davis possessed a can of mace. When they arrived at the decedent's residence, they waited for him to come out. When the decedent exited his residence, the brothers confronted him. Following a short argument between Mr. Webster and the decedent, the decedent ran between two cars and ducked. Mr. Davis thought the decedent was going to reach for a gun so he sprayed mace in the decedent's direction. Mr. Webster then charged the decedent. A scuffle ensued between Mr. Webster and the decedent during which Mr. Davis sprayed mace on both combatants. Mr. Davis heard Mr. Webster and the decedent make noises of pain that he determined were caused by the mace. He then heard the decedent call out for help. When the decedent called out for help, Mr. Davis felt things were getting out of hand so he panicked and ran to their car. When Mr. Webster returned to the car, he had blood on his hands. He indicated that he and the decedent had been involved in a stabbing incident.

A police incident report contained in the investigatory report indicates that, after Mr. Webster turned himself in, he informed the officers that he and his brother decided to confront the decedent about the abuse of their sister. He stated, "We had no intention of killing that boy, we just wanted to kick his ass." Mr. Webster indicated he knew of the incident where the decedent had broken his sister's facial bones and that his sister had informed him that the decedent had made recent death threats to her. Mr. Webster claimed he had acted in self-defense after the decedent pulled a knife and stabbed him in the upper

thigh. The reporting police officer indicates in the report that the proximity of Mr. Webster's wound was indicative of a self-inflicted stab wound.

Further information contained in the investigatory report indicates that the decedent suffered 40 stab wounds which caused his death. There is no indication in the record that the decedent was in the possession of a gun during the incident.

Section 10.1(d) of the Act provides that an award shall be reduced or denied according to the extent to which the victim's acts or conduct provoked or contributed to his injury or death, or the extent to which any prior criminal conviction or conduct of the victim may have directly or indirectly contributed to the injury or death of the victim. The record in this claim indicates that the victim's prior criminal conduct, the incidents of violence against Sherry Webster, did contribute to his death. Mr. Davis's and Mr. Webster's actions were taken in retaliation of the decedent's prior conduct toward their sister. The record also indicates that the premeditated confrontation of the decedent by Mr. Davis and Mr. Webster occurred two weeks after the last incident of violence against Ms. Webster.

In a case where the Court reduced an award due to the contributory conduct of the victim (*In re Application of Ford* (1995), 47 Ill. Ct. Cl. 580), the Court stated at 47 Ill. Ct. Cl. 585, "Our determination is supported and influenced by our view that the public policy underlying the Act's contributory reduction requirement is to discourage, and to avoid State support for, illegal and violence-provoking conduct." The decedent's prior conduct requires that any possible award would have to be reduced to the extent his conduct contributed to his death. However, given the facts that two weeks had passed between the

decedent's last incident of violence against Ms. Webster and that the confrontation of the decedent by Mr. Davis and Mr. Webster was premeditated, it is the opinion of this Court that if an award could be granted, it would not be reduced in its entirety. The Court finds that if an award could be granted in this cause, it would be reduced by 25% due to the decedent's prior conduct. However, for the following reasons, the Court finds that the claim must be denied.

The Claimant is seeking compensation for medical expenses, funeral expenses and loss of support. To prevail, the Claimant must prove by a preponderance of the evidence that she has sustained a compensable loss under the rules of the Act. (*In re Application of Goff* (1989), 41 Ill. Ct. Cl. 320, 327.) Section 10.1(g) of the Act states that "compensation under this Act is a secondary source of compensation * * *." An award under the Act is therefore reduced by recoveries from various sources, including life, health, accident or liability insurance.

A hospital report contained in the investigatory report indicates the decedent's medical bills from St. Francis Hospital, which totaled $14,514.28, were written off by the hospital as a bad debt. Claimant testified that she had not paid any of decedent's medical bills. This portion of her claim must therefore be denied because she failed to prove she incurred any compensable loss regarding the medical bills.

The Claimant testified that the funeral expenses were paid through an insurance policy. This portion of her claim must therefore be denied since a recovery through an insurance policy must be deducted from any possible award.

In Claimant's application for benefits, Claimant also seeks loss of support on behalf of Shakelia Alexander,

daughter of the decedent. At the trial, Claimant stated she was also seeking compensation for loss of support on behalf of two additional children of her son. The Claimant testified the children had different mothers who were supporting the children. Claimant did not present any evidence that Claimant was under any legal obligation to support the children. Though the Claimant testified that her son was working at the Ponderosa Steak House at the time of his death, she did not produce any evidence to document that her son was providing support to his children. The application for benefits under the Act has the burden of proving loss of support by a preponderance of the evidence. (*In re Application of DeBartolo* (1984), 36 Ill. Ct. Cl. 442, 445.) The Claimant has failed to present any evidence to prove the claim for loss of support. This portion of her claim must therefore be denied.

While the Court is sympathetic with the Claimant for the loss of her son, this claim must be denied due to the failure of Claimant to prove a compensable loss regarding medical and funeral expenses and the failure to prove the claim for loss of support by a preponderance of the evidence. Claimant has failed to meet her burden of proof.

For the foregoing reasons, it is the order of the Court that Claimant's claim be and hereby is denied.